KAYLOR B. ROBINSON; BRENDA M. BELL; DANNY McGEE; JIMMY McGEE; WILLIAM DAMEWOOD; NANCY McGEE; MAZZLE MEMORY; MARTHA WHITED; AND MARY BROWN, PLAINTIFFS v. FOREST CREEK LIMITED PARTNERSHIP; THORTON VENTURES, LLC AND URBAN PIPELINE, INC., DEFENDANTS

No. COA11-118

(Filed 19 July 2011)

**Cemeteries— grave desecration—summary judgment**
 The trial court did not err in a grave desecration case by granting summary judgment in favor of defendants. There was no evidence showing that defendants graded the property on which the gravesite is located or in some other way desecrated the gravesite.

Appeal by Plaintiffs from order entered 16 July 2010 by Judge Lucy Noble Inman in Orange County Superior Court. Heard in the Court of Appeals 23 May 2011.

*Law Office of Robert B. Jervis, P.C., by Robert B. Jervis, for Plaintiffs.*

*Pinto Coates Kyre & Brown, PLLC, by Deborah J. Bowers and David L. Brown, for Defendants.*

STEPHENS, Judge.

### Factual and Procedural Background

In 1919, John R. Magee and his wife Mollie W. Magee were interred in a small burial ground located on a large tract of land in Wake County. The land was later sold in separate parcels, but was recombined when a member of the Wadford family purchased the entire tract in the mid-1940s. The Wadford family owned the entire tract until 1999, when they sold approximately 80 acres of the tract to Thorton Ventures, LLC ("Thorton Ventures"). Thorton Ventures combined the tract purchased from the Wadford family with a small, neighboring tract and separated that combined tract into nine lots to be developed for residential use. In 2001, Thorton Ventures sold two of the lots, Lot 3 and Lot 4, to Forest Creek Limited Partnership ("Forest Creek"); Forest Creek developed an apartment complex on its two lots. Thorton Ventures developed single-family homes on several of the remaining lots.

In 2005, Kaylor B. Robinson ("Robinson"), a great-granddaughter of John R. Magee who had recently begun a quest to ascertain the whereabouts or resting places of her extant and deceased relatives, learned of John R. and Mollie W. Magee's interment in the property formerly owned by the Wadford family. Robinson, along with Brenda M. Bell ("Bell"), a granddaughter of John R. Magee, petitioned the Wake County Clerk of Superior Court for an order "allowing [Robinson and Bell] and their designees to enter the property of [Forest Creek] to discover, restore, maintain, and visit a grave site reasonably believed to be located on such property." Pursuant to a consent order entered in that action, Robinson and Bell were granted access to Forest Creek's property "for the purpose of discovering the exact location of the grave of [Robinson's and Bell's] ancestor John R. Magee." With help from an archaeologist, Robinson and Bell ultimately located on Lot 4 what appeared to be the remains of at least two adults; there were no gravestones marking the location where the remains were discovered.

Because Robinson had received information that John R. and Mollie W. Magee were buried below two gravestones bearing their

names and that the burial ground was surrounded by a wrought-iron gate, which was still upright as late as 1999, Robinson, along with Bell and eight other grandchildren of John R. Magee (collectively, "Plaintiffs"), instituted the present action against Forest Creek in Orange County Superior Court, seeking (1) preliminary and permanent injunctions prohibiting Forest Creek from preventing Plaintiffs from accessing, maintaining and installing grave markers on the grave sites; (2) recovery of expenses incurred in locating and obtaining access to the grave site; and (3) actual and punitive damages for Forest Creek's desecration of the grave sites by removing the gravestones above, and fence around, the burial site. With the consent of the parties, the special proceeding in Wake County was transferred to Orange County Superior Court and consolidated with the present action. Plaintiffs later amended their complaint to include desecration claims against Thorton Ventures and Urban Pipeline, Inc. ("Urban Pipeline"), whose predecessor Carolina Construction and Grading, Inc. ("Carolina Construction") was responsible for the grading on several of the lots developed by Thorton Ventures. According to the Record on Appeal, "Plaintiffs resolved all of their claims against Forest Creek and they are no longer parties to this case," leaving Plaintiffs' desecration claims against Thorton Ventures and Urban Pipeline as the only remaining claims in this action.[1]

On 10 June 2010, Thorton Ventures and Urban Pipeline (collectively, "Defendants") filed a motion for summary judgment. The motion was heard on 14 July 2010 before the Honorable Lucy Noble Inman in Orange County Superior Court. Following the hearing, the trial court granted summary judgment for Defendants in an order entered 16 July 2010. On 5 August 2010, Plaintiffs gave notice of appeal to this Court.

## Discussion

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."

---

1. Prior to settlement of the Forest Creek claims, Thorton Ventures, Urban Pipeline, and Forest Creek all filed motions to dismiss portions of Plaintiffs' claims. The trial court (1) dismissed the desecration claims against Forest Creek, Thorton Ventures, and Urban Pipeline only as to Plaintiff Robinson; and (2) based on the terms of the consent order previously entered in the special proceeding action, ordered that Plaintiffs "are barred from seeking to reestablish any permanent cemetery . . . on [] Forest Creek's property as a portion of their remedy in this action."

N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009). "The showing required for summary judgment may be accomplished by proving an essential element of the opposing party's claim does not exist . . . or by showing through discovery that the opposing party cannot produce evidence to support an essential element of her claim." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) (citation omitted).

In this case, Plaintiffs are asserting a claim for grave desecration. In *King v. Smith*, 236 N.C. 170, 72 S.E.2d 425 (1952), our Supreme Court acknowledged a plaintiff's cause of action "to recover damages for the wrongful desecration of the graves of plaintiffs' ancestors" "in violation of [N.C. Gen. Stat. §] 65-15." *Id.* at 170, 72 S.E.2d at 425. Although section 65-15 was repealed in 1971, that same year the provisions of section 65-15 were transferred to section 65-13, which was amended by the same session law that repealed section 65-15. Act of July 8, 1971, ch. 797, secs. 1-2, 1971 N.C. Sess. Laws 1035, 1035-37. In 2007, the legislature repealed section 65-13, but enacted section 65-106, which was identical to the newly-repealed section 65-13. Act of June 27, 2007, ch. 118, secs. 1, 4, 2007 N.C. Sess. Laws 188, 190-93. The provisions of current section 65-106 are substantially similar to those of section 65-15 that were effective when our Supreme Court decided *King*. Compare N.C. Gen. Stat. § 65-106 (2009); N.C. Gen. Stat. § 65-15 (1951). As such, we conclude that the civil cause of action "to recover damages for wrongful desecration of the graves of [a plaintiff's] ancestors" as acknowledged in *King* is still a viable action in this State.[2] *See King*, 236 N.C. at 170, 72 S.E.2d at 425.

We note, however, that neither *King*, nor section 65-106, nor any other case decided in North Carolina, delineates the elements of a civil cause of action for wrongful desecration of a gravesite.

2. In their amended complaint, Plaintiffs allege that Defendants graded the property on which the gravesite is located "in violation of the provisions of [N.C. Gen. Stat. §] 14-149," a *criminal* statute. As correctly noted by Defendants, a civil cause of action is not necessarily created by a violation of a criminal statute. *See, e.g., Gillikin v. Springle*, 254 N.C. 240, 243, 118 S.E.2d 611, 614 (1961) (holding that while "[p]erjured testimony and the subornation of perjured testimony are criminal offenses," "neither are torts supporting a civil action for damages."). Nevertheless, the fact that Plaintiffs mislabeled their cause of action as one arising under a criminal grave desecration statute is not fatal to Plaintiffs' claim. As Plaintiffs' complaint gives sufficient notice of the wrong alleged—*i.e.*, desecration by grading over the gravesite—Plaintiffs' incorrect choice of legal theory does not warrant summary judgment so long as Plaintiffs' allegations "are sufficient to state a claim under some legal theory." *See Mims v. Mims*, 305 N.C. 41, 61, 286 S.E.2d 779, 792 (1982) (holding that in the summary judgment context, plaintiff's incorrect legal theory is not fatal to his claim when the allegations in the complaint "give sufficient notice of the wrong complained of" and "are sufficient to state a claim under some legal theory"). We address the sufficiency of Plaintiffs' allegations as a civil grave desecration claim *infra*.

Nevertheless, without contemplating all the elements that may be required for a successful desecration claim, we think it obvious that one essential element of such a claim must be that the defendant engaged in some act of desecration. *See Rodman v. Mish*, 269 N.C. 613, 615, 153 S.E.2d 136, 138 (1967) (quoting "130 A.L.R. 259" and recognizing that "the heirs of a decedent at whose grave a monument has been erected, or the person who rightfully erected it, could recover damages from one who *wrongfully injured or removed it*" (emphasis added)); *King*, 236 N.C. at 170-71, 72 S.E.2d at 425-26 (stating that allegations that defendant "destroyed said graves and exposed the remains of their said ancestors by *leveling off the hill* on which the graveyard was located" were "sufficient to constitute a cause of action for the wrongful desecration of the graves" (emphasis added)); *Perry v. Cullipher*, 69 N.C. App. 761, 763, 318 S.E.2d 354, 356 (1984) ("The gravamen of an action for the desecration of a grave is . . . for mental suffering for the *disturbance of the final resting place for a loved one.*" (emphasis added)); *see also Hairston v. General Pipeline Constr., Inc.*, 704 S.E.2d 663, 673 (W. Va. 2010) (listing as an element of a common law cause of action for grave desecration that "the defendant proximately caused, either directly or indirectly, *defacement, damage, or other mistreatment of the physical area of the decedent's grave site or common areas of the cemetery* in a manner that a reasonable person knows will outrage the sensibilities of others" (emphasis added)).

In this case, Plaintiffs allege in their amended complaint that "Plaintiffs are informed and believe that" Defendants "desecrated the grave sites during the grading portion of Defendants' development." Plaintiffs' only support for this allegation of desecration is Robinson's deposition testimony that on 7 April 2008, she spoke with Tom Beebe ("Beebe"), a part owner of both Thorton Ventures and Urban Pipeline's predecessor Carolina Construction, who told Robinson that he "personally graded everything" "[o]n the left-hand side" or north side of Thorton Road.[3] Plaintiffs contend that this statement by Beebe creates a genuine issue of material fact as to Defendants'

---

3. The exhibits on appeal show that Thorton Road is an east-west road that intersects United States Highway One in Wake County. Thornton Commons Drive intersects Thorton Road twice and forms a semi-circle, or "horseshoe shape," on the north side (or "left-hand side" if one is travelling east from Highway One) of Thorton Road. The land inside Thorton Commons Drive is divided into four lots that roughly constitute four quadrants in the horseshoe. The southeast and southwest quadrants, labeled Lot 6 and Lot 7, respectively, abut the north side of Thorton Road and were developed by Thorton Ventures. Lot 4, which constitutes the northwest quadrant, was sold to Forest Creek in 2001; Lot 4, the lot on which the gravesite is located, does not abut Thorton Road.

alleged desecration of the gravesite. We disagree. Certainly the existence of conduct by Defendants constituting grave desecration is a material fact. However, to maintain a genuine issue as to that fact, Plaintiffs must forecast substantial evidence of the existence of that fact. *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835 ("A 'genuine issue' is one that can be maintained by substantial evidence."). This Plaintiffs have not done. In our view, Beebe's alleged statement, taken as true, does not serve as substantial evidence that Beebe, on behalf of one or both Defendants, graded the land where the gravesite is located.

Beebe's statement that he graded the land on the "left-hand side" or north side of Thorton Road logically refers only to the land actually on the north side of Thorton Road and not to all land north of Thorton Road. As discussed above, the gravesite is located in Lot 4 (the northwest quadrant of the Thorton Commons Drive horseshoe), which is *north* of Thorton Road, but which does not abut *the north side* of Thorton Road. Between Lot 4 and Thorton Road is Lot 6, the southwest quadrant of the Thorton Commons Drive horseshoe, which was developed by Thorton Ventures.

This interpretation is substantially corroborated by Beebe's own deposition testimony, in which Beebe asserted that (1) Thorton Ventures owned Lot 6 and Lot 7 (the southern quadrants of the Thorton Commons Drive horseshoe) and "hired someone to do the grading there"; (2) Lot 4 was sold to Forest Creek and Thorton Ventures "did not do any of the grading on [Lot] 4"; and (3) the grading on Lot 4 was done by Jones Brothers, a subcontractor working for Forest Creek's contractor. Furthermore, Lynn Craig, a part-owner of Carolina Construction, testified in his deposition that Jones Brothers, not Carolina Construction, did the grading for the apartment complex on Lot 3 and Lot 4.

The entirety of the evidence in this case, including Beebe's alleged statement that he graded the property on the "left-hand side" of Thorton Road, leads to the conclusion that Lot 4 was graded by a company hired indirectly by Forest Creek, the owner of Lot 4, and not by Defendants. With no evidence showing that Defendants graded the property on which the gravesite is located, or any evidence showing that Defendants desecrated the gravesite in some other way, we must conclude that Plaintiffs have failed to present substantial evidence showing a genuine issue as to the material fact of Defendants' alleged desecration. Because an act of desecration by Defendants is an essential element of Plaintiffs' claim, and because Plaintiffs have failed to

raise a genuine issue as to the existence of that material fact, we conclude that the trial court properly granted summary judgment for Defendants. Accordingly, the order of the trial court is

AFFIRMED.

Chief Judge MARTIN and Judge THIGPEN concur.